UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
LEWIS BAERINGER, CINDY
BAERINGER, individually and as the
parents and natural guardians of H.B.,
their infant daughter,

                     Plaintiffs,

      -against-

PLAINVIEW-OLD BETHPAGE
CENTRAL SCHOOL DISTRICT and
ALICE BOWMAN, individually and in
her official capacities as an employee of
the school district,

                    Defendants.

-----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 23-cv-03557 (FB) (SIL)

*Appearances:*
*For the Plaintiffs:*
MICHAEL R. WALKER
Gallagher, Walker, Bianco & Plastaras,
LLP
98 Willis Avenue
Mineola, NY 11501

*For the Defendants:*
ADAM I. KLEINBERG
SAMANTHA VELEZ
Sokoloff Stern LLP
179 Westbury Avenue
Carle Place, NY 11514

**BLOCK, Senior District Judge:**

      In this civil-rights case brought by Plaintiffs Lewis and Cindy Baeringer

individually and on behalf of their infant daughter, H.B., Defendants the

Plainview-Old Bethpage Central School District (the "District") and Principal

Alice Bowman ("Bowman") (collectively, "the Defendants") move to dismiss for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For

the following reasons, Defendants' motion is granted in part and denied in part.

## I.     BACKGROUND

On a Rule 12(b)(6), the Court assumes the complaint's factual allegations, but not legal conclusions, to be true.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013).  To survive, the complaint must include enough facts to state a claim to relief that is facially plausible, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), i.e., the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The case springs from a medical issue involving H.B., a middle-school student at the District's Plainview-Old Bethpage Middle School, located in Nassau County.  On January 31, 2022, H.B. experienced unspecified emotional distress "arising from events involving other students," which led H.B. to seek the services of a school counselor/psychologist.  The school counselor advised Plaintiffs that H.B. would need to be removed from school, evaluated, and psychologically cleared by an independent psychologist before returning to school.  At around 4:30 PM that day, H.B. received the evaluation from an independent psychologist, who notified the school counselor that H.B was cleared to return to school.

2

Plaintiffs allege that several hours later, the District/Bowman contacted the

Nassau County Police Department to have H.B. "undergo an involuntary, forced,

and unnecessary, second psychological evaluation."  In the early evening of the

same day, January 31, 2022, numerous police officers arrived at Plaintiffs'

residence and forcibly and involuntarily transported H.B. via police ambulance to

Nassau University Medical Center for a second psychological evaluation.

At the Medical Center, Plaintiffs state that Cindy Baeringer and H.B. were

placed in an observation room and "observed" for several hours before the

individual psychological evaluation was performed on H.B.  This evaluation

cleared H.B., who was then released to go home.  Plaintiffs allege that the District

and Bowman's actions were in retaliation for "prior events and occurrences

between the parties."  Plaintiffs commenced suit, bringing federal claims pursuant

to 42 U.S.C § 1983 and a state-law claim for negligence.

## II.      DISCUSSION

### A. Fourteenth Amendment Due Process Claims

The Court denies Defendants' motion to dismiss Plaintiffs' procedural and

substantive due process claims, which differ in that substantive due process

challenges "the fact of the removal itself," rather than the "procedures by which a

removal is effected."  *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir.

3

2012) (discussing theories).

### 1. *Procedural Due Process*

Plaintiffs state a claim for procedural due process against Bowman, which requires two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dept.*, 692 F.3d 202, 218 (2d Cir. 2012). Before parents may be deprived without their consent of their "constitutionally protected liberty interest in the care, custody and management of their children" under the Fourteenth Amendment, "due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999). Thus, this procedural due process right "may be violated by government official's removal of a child even for a brief period of time." *S.G. v. Success Acad. Charter Sch., Inc.*, No. 18 CIV. 2484 (KPF), 2019 WL 1284280, at *14 (S.D.N.Y. Mar. 20, 2019) (citing *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 375 (S.D.N.Y. 2012)). Here, Plaintiffs allege that Bowman violated their procedural due process rights by initiating an involuntary,

unnecessary removal and medical examination of H.B.[1]

While emergency circumstances — i.e., where "the child is immediately threatened with harm," which must be more than the "mere possibility of danger" — may justify the removal of a child, *Tenenbaum*, 193 F.3d at 593-94, Plaintiffs sufficiently allege that there was no emergency to justify the involuntary removal of H.B.  Taking the Complaint's allegations as true, the District had already cleared H.B. to return to school; moreover, there was no school scheduled for the next day.  Thus, no emergency justified the removal of H.B.

While Defendants claim that no procedural due process claim will lie where

---

[1] Defendants' argument that Plaintiff-parents lack standing to assert due process claims is misplaced.  Defendants rely on cases establishing that parents cannot bring due process claims based on their children's school suspension, *see Moskowitz v. Great Neck Union Free Sch. Dist.*, No. 20CV1659KAMSIL, 2021 WL 4268138, at *15 (E.D.N.Y. Aug. 4, 2021*), report and recommendation adopted*, No. 20CV1659KAMSIL, 2021 WL 3878777 (E.D.N.Y. Aug. 31, 2021), or based on in-school student harassment of their child.  *See HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 CS, 2012 WL 4477552, at *18 (S.D.N.Y. Sept. 27, 2012).  But here, Plaintiffs' have standing based on their own rights — their liberty interests in the custody, care, and management of their children — as parents.  The Second Circuit is clear that "both the parents and the children may have a cause of action for violation of the Fourteenth Amendment under a theory of denial of procedural due process, and "a parent may also bring suit under a theory of violation of his or her right to substantive due process." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012).  Thus, Plaintiffs may proceed with their Fourteenth Amendment claims both individually and on behalf of H.B.  *See Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 208 (E.D.N.Y. 2018) (mother "may bring due process claims on behalf of her minor son").

parents have not lost custody of their children, the cases on which they rely are factually distinct.  *See, e.g., K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 202 (S.D.N.Y. 2013) (in-school interview of child without parental consent did not violate liberty interest).  By contrast, Plaintiffs allege the physical, involuntary, and unnecessary removal of H.B. from her parents' home; as the Second Circuit stated in *Tenenbaum*, the physical removal of the child from school was tantamount to "remov[al] [of the] child from her [parents'] ordinary care, custody and management."  193 F.3d at 595.  For that reason, lower courts in the Second Circuit have distinguished between cases where the child is interviewed but not removed from school grounds, which does not implicate parental custodial rights, and physical removal, which does.  *See Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 373 n.27 (S.D.N.Y. 2012) (citing *id.* at 594-95).

Accordingly, because Plaintiffs' allegations plainly implicate the "right under the Due Process Clause to remain together [with their children] without the coercive interference of the awesome power of the state," *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (quoting *Tenenbaum*, 193 F.3d at 600)), and they allege personal involvement by Bowman, Plaintiffs state colorable procedural due process claims against Bowman.  *See, e.g., Tenenbaum*, 193 F.3d at 595 (a jury could find that removal of child from school for non-emergency

6

medical examination without parental consent or a court order violated procedural due-process rights); *S.G.*, 2019 WL 1284280, at *18 (plaintiff stated procedural and substantive due process claims where school officials caused the plaintiff "to be removed from school to the emergency room without parental consent when there was no urgent medical necessity").

## 2.  *Substantive Due Process*

Similarly, Plaintiffs state a claim for violation of substantive due process, which requires allegations that the state action was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection."  *Tenenbaum*, 193 F.3d at 600.

While "short separations" of children from their parents generally do not violate substantive due process rights, *Southerland*, 680 F.3d at 143, even "if done in a manner that violates procedural due process," *see McLoughlin v. Rensselaer Cnty. Dep't of Soc. Servs.*, No. 118CV0487LEKCFH, 2019 WL 3816882, at *9 (N.D.N.Y. Aug. 14, 2019) (citing *Tenenbaum*, 193 F.3d at 600), the Second Circuit has recognized that in "truly extraordinary circumstances," even brief deprivations of custody may suffice for plaintiffs to state a substantive due process custody claim.  *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011).

The facts alleged here do not permit the Court to conclude, as a matter of

law, that Plaintiffs failed to state a substantive due process claim because there was neither an emergency nor a child-abuse investigation.  The Complaint alleges that Bowman acted with malice by retaliating against Plaintiffs, which may suffice to state a substantive due process claim.  *MC v. Arlington Cent. Sch. Dist.*, No. 11-CV-1835 CS, 2012 WL 3020087, at *6 n.10 (S.D.N.Y. July 24, 2012) (collecting cases).  While discovery may later undermine this narrative, the Court cannot dismiss the Complaint now because it alleges conscience-shocking behavior.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."); *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) ("As a substantive matter, due process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others"); *S.G.*, 2019 WL 1284280, at *17 ("Defendants are alleged to have deliberately and in bad faith used the EMS removal and hospitalization as a form of discipline, without any legitimate medical purpose. . . . Such conduct, if proven, easily would support findings [] that Defendants' actions shocked the conscience."); *Camac v. Long Beach City Sch. Dist.*, No. 09-CV-5309, 2011 WL 3030345, at *4, 14 (E.D.N.Y. July 22, 2011) (alleged false report to police of student's suicide attempt and falsely testifying

8

under oath to same, which resulted in child's commitment at hospital, stated

substantive due process claim).

## B. Fourth Amendment Claims

The Court also denies Defendants' motion to dismiss as to the Fourth

Amendment unreasonable search and seizure/false imprisonment/false arrest claim

against Bowman.[2]  *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (false

arrest and false imprisonment claims are "synonymous" for purposes of the legal

analysis); *McCarthy v. Roosevelt Union Free Sch. Dist.*, No. 15CV01468JFBSIL,

2017 WL 4155334, at *4 (E.D.N.Y. Sept. 19, 2017) (construing false

imprisonment, false arrest, and unreasonable search and seizure claims together

where duplicative).  This claim requires that: "(1) the defendant intended to

confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff

did not consent to the confinement, and (4) the confinement was not otherwise

privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003).  The

involuntary removal and hospitalization of H.B. by police constitutes a

---

[2] Fourth Amendment rights are "personal rights that cannot be asserted vicariously but may be brought on behalf of a child by a parent." *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 366 (S.D.N.Y. 2010), *aff'd sub nom. E.D. ex rel. Demtchenko v. Tuffarelli*, 408 F. App'x 448 (2d Cir. 2011).  Thus, the Court construes the Complaint's Fourth Amendment claims as being asserted by the Baeringer parents on behalf of H.B.

confinement for the purposes of false arrest/imprisonment claims. *See Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (involuntary confinement at hospital "was tantamount to the infringement of being arrested").

Defendants argue that liability will not attach "where police officers detained and hospitalized a plaintiff based upon their own interactions." But as courts have recognized, "there is an exception to this rule where a plaintiff can show that defendant instigated his arrest, thereby making the police agents in accomplishing defendant's intent to confine the plaintiff." *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 268–69 (E.D.N.Y. 2010). Thus, drawing reasonable inferences in Plaintiffs' favor, they sufficiently allege Fourth Amendment claims — that Bowman contacted the police knowing that H.B. had already been cleared to return to school. As liability may lie if the "complainant intentionally provided false information to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report," there are issues of fact as to what Bowman knew and told the police. *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013) (declining to dismiss false arrest claim against Department of Education defendants who summoned the police); *see also Camac*, 2011 WL 3030345, at *8 (whether school principal's conduct — falsely telling police that student threatened to commit suicide — "rises to the level of

instigating is a question of fact" and survives motion to dismiss).

### C. Qualified Immunity

The Court denies Bowman's affirmative defense of qualified immunity, which "shields federal and state officials from money damages unless the plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022).  "[E]ven if the right was clearly established," a court can still find a suit blocked by qualified immunity where "it was objectively reasonable for the officer to believe the conduct at issue was lawful."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

While a court can decide qualified immunity on a Rule 12(b)(6) motion, "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch and, therefore, usually not successful" because a plaintiff "need not plead facts showing the absence of such a defense in the complaint." *Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 245 (E.D.N.Y. 2023) (cleaned up).

Because the Court has determined that Plaintiffs have plausibly alleged that Bowman violated their constitutional rights, the Court turns to whether — based on the Complaint's allegations — a reasonable officer would know that such conduct

11

was unconstitutional at the time.  The Court concludes that any reasonable person, let alone a principal, would know that instigating the removal, seizure, and involuntary hospitalization of H.B. when she was already psychologically cleared violates constitutional rights under both the Fourth and Fourteenth Amendments. *See, e.g.*, *Biswas*, 973 F. Supp. 2d at 521 ("no reasonable person could believe that it was lawful to report such knowingly false information to cause the arrest of the plaintiff"); *Camac*, 2011 WL 3030345, at *17 (principal calling police to falsely report student threatened suicide was not objectively reasonable as a matter of law); *Rateau v. City of New York*, No. 06-CV-4751 KAM/CLP, 2009 WL 3148765, at *6 (E.D.N.Y. Sept. 29, 2009) (denying qualified immunity because defendant should know that falsely instigating arrest violates constitutional rights).

### D. *Monell* Claim Against the District

Because there is no *respondeat superior* under Section 1983, the District is not liable for the acts of employees unless there was a policy or custom that caused the plaintiff to be deprived of a constitutional right.  *See Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).  A "policy or custom," in turn, may be shown only through "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to

12

practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

As an initial matter, the Court can rule out several bases for *Monell* liability. First, the Complaint alleges no municipal-wide policy or custom of calling the police on students who had already been cleared to return to school; rather, the Complaint suggests an isolated incident in which a principal had a personal vendetta against a student's family, which hardly suffices as policy or custom. *See Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts ... by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."). Indeed, Bowman's actions appear to be in direct conflict with established policy, whereby students who are psychologically cleared can return to school.  Second, the failure-to-train allegations are merely conclusory, and there is no suggestion that proper training could have prevented the principal from acting in a rogue manner against policy. *See McCarthy*, 2017 WL 4155334, at *6 n.8

The Court next concludes that Bowman is not a final policymaker for *Monell* purposes, which requires the official to be "sufficiently high up in the municipal hierarchy that [she] was responsible under state law for making policy in that area of the municipality's business."[3] *Agosto*, 982 F.3d at 98.  Courts,

---

[3] Similarly, Plaintiffs fail to allege that a policymaking official "had notice of a

13

including the Second Circuit in *Agosto*, have concluded that principals are not final policymakers under *Monell* and rejected the theory that "a public-school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control." *Id.* at 100-01.  Critically, New York law grants the Board of Education, not the principal, the power "[t]o establish such rules and regulations [as shall seem proper] concerning the order and discipline of the schools." *Wang v. Bethlehem Cent. Sch. Dist.*, No. 121CV1023LEKDJS, 2022 WL 3154142, at *11 (N.D.N.Y. Aug. 8, 2022).

Indeed, Plaintiffs' opposition brief belies their assertion that Bowman is a final policymaker; as they state, Bowman is empowered to enforce the Code of Conduct.  But as courts have held, the principal's authority to *enforce policy* is not tantamount to *final policymaking* authority.  *See Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y.), *aff'd*, 666 F. App'x 92 (2d Cir. 2016) ("the power to enforce all provisions of law and all rules and regulations of the board of education but not to promulgate or otherwise create rules, regulations,

---

potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious, and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *O'Kane v. Plainedge Union Free Sch. Dist.*, 827 F. App'x 141, 143 (2d Cir. 2020) (stating standard for deliberate indifference).

14

or policies of his own" makes an official a decision-maker, but not final

policymaker).  Accordingly, while Bowman may have discretion in the

performance of her duties and decision-making power to enforce the Code, she is

not, as a matter of law, a final policymaker.  *See Kennedy v. Bethpage Union Free*

*Sch. Dist.*, No. 20-CV-72 (PKC) (ARL), 2022 WL 377972, at \*5 (E.D.N.Y. Feb. 8,

2022), *aff'd*, No. 22-447-CV, 2023 WL 1770421 (2d Cir. Feb. 6, 2023); *O'Kane v.*

*Plainedge Union Free Sch. Dist.*, No. 16CV5693FBARL, 2019 WL 4575390, at \*4

(E.D.N.Y. Sept. 20, 2019), *aff'd*, 827 F. App'x 141 (2d Cir. 2020).  Consequently,

the Court dismisses the *Monell* claim against the District.

### E.  Negligence

While Plaintiffs' theory of negligence is unclear, their allegations against the

District fail to state a claim.  First, a claim for negligent hiring, training, and

supervising fails because Plaintiffs do not allege that the "defendant knew of the

employee's propensity to commit the alleged acts or that defendant should have

known of such propensity had it conducted an adequate hiring procedure."

*Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122,

135 (E.D.N.Y. 2010).  To the extent Plaintiffs allege that the District was negligent

in failing to have appropriate policies, their factual allegations in the Complaint

undermine their conclusory allegations: they claim that Defendants acted in

15

contravention of policy by subjecting H.B. to an evaluation *after* she had already been cleared. Finally, Plaintiffs cannot avail themselves of a negligence claim to impute liability to the District based on *respondeat superior* because liability will not attach where an "employee commits a tort for personal motives unrelated to the furtherance of the employer's business." *Flores v. Saulpaugh*, 115 F. Supp. 2d 319, 325 (N.D.N.Y. 2000). Here, the Complaint alleges such a personal motive by stating that Bowman's actions were "retaliation for prior events and occurrences that had occurred between the parties."

Plaintiffs do, however, state a negligence claim against Bowman because principals owe a duty of reasonable care to their students. *See JG & PG ex rel. JGIII v. Card*, No. 08 CIV. 5668 (KMW), 2009 WL 2986640, at *10 (S.D.N.Y. Sept. 17, 2009). However, because principals do not owe duties to *parents*, *see Murray v. Rsch. Found. of State Univ. of New York*, 723 N.Y.S.2d 805, 807 (4th Dep't 2001); *see also W.A. v. Hendrick Hudson Cent. Sch. Dist. & Kathleen Coughlin*, No. 14-CV-8093 (KMK), 2016 WL 1274587, at *14 (S.D.N.Y. Mar. 31, 2016) (collecting cases), Plaintiffs may proceed only on behalf of H.B. *See JG*, 2009 WL 2986640, at *10.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and

DENIED in part.  Plaintiffs' procedural and substantive due process claims and

Fourth Amendment claims pursuant to § 1983 and negligence claims against

Bowman survive; their claims against the District are dismissed.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 25, 2024

17